The Des Moines N. & R. R. Co. v. Cooper et al.

1. **Public Lands:** DES MOINES RIVER GRANT: CONSTRUCTION. For the purpose of determining the extent of the original grant of lands to the State of Iowa, under the Act of Congress, approved August 8, 1846, the northern terminal line adopted by the government is one drawn at right angles with the general direction of the Des Moines river.

2. ———: ———: ———. Facts considered upon which it is held that the land in controversy lies outside of the grant made to aid in the improve-ment of the navigation of the Des Moines river.

*Appeal from Polk District Court.*

WEDNESDAY, OCTOBER 6.

THE petition alleges that plaintiff is the owner of the north half of the northwest quarter, and the northwest quarter of the northeast quarter of section 21, township 79, range 23, the same being a part of the grant to the State of Iowa, by Act of Con-gress of the United States, of August 8, 1846, for the improve-ment of the navigation of the Des Moines river, and that defendants claim title to said land under and by virtue of an alleged patent issued to the defendant, William Cooper, by the government of the United States, after the lands were sold to plaintiff by the State of Iowa. The petition prays that this

patent, and the subsequent conveyances thereunder, may be cancelled. The court dismissed the petition. Plaintiff appeals.

*Nourse & Kauffman*, with *Finch & Sickmon*, for the plaintiff.

The land in controversy, being within five miles of the Des Moines river, not above the mouth of the Raccoon Fork and in an odd section, became the absolute property of the state when the commissioners of the state had made their selection. The certificate of the department was not necessary to the validity of the title, and a refusal to grant it, or a permission to private individuals to enter the lands, could not deprive the state of its rights. (*Fremont and Mills Cos. v. B. & M. R. R. Co.*, 22 Iowa, 93; *Id. v. Id.*, 9 Wal., 89; *Railroad Co. v. Smith*, 9 Wal., 97.) This action is not barred by the statute of limitations. (*D. M. Nav. Co. v. Polk Co.*, 10 Iowa, 2; *County of Des Moines v. Harker*, 34 Id., 34; *Bellows v. Todd*, 39 Id., 209.)

*E. J. Goode*, for defendant.

The state having permitted the government to offer, and the defendant to purchase, the land in controversy, without objection or protest, its grantee is estopped from claiming that the land is embraced in the grant of 1846. (*Carver v. Jackson*, 4 Peters, 1; *Com. v. Pejepscut Props.*, 10 Mass., 155; *Com. v. Heirs of Andre & Billon*, 3 Pick., 224, citing 4 Binney, 231, Stearns on Real Actions, 179, 10 Mass., 200; *Vermont v. Society for Prop. of the Gospel*, 2 Pa., 546; *Nieto's Heirs v. Carpenter*, 7 Cal., 527; *Magee v. Hallett*, 22 Ala., 699; Bigelow on Estoppel, 276; *Lucas v. Hart*, 5 Iowa, 416; *Gardner v. Ladue*, 47 Ill., 211.) Selection of the lands by the agent of the state, and approval by the Secretary of the Treasury, were necessary to divest the United States of its title, and the grant did not attach until these conditions had been complied with. (*Lessieur v. Price*, 12 How., 76; *Williams v. Baker*, 17 Wal., 146.) No reservation or appropriation can be made of land after preemption by a citizen. (15 Pet., 407.)

This right cannot be impaired by a subsequent grant. (24 How., 394; 1 Black., 132.)

DAY, J.—So much of the Act of Congress, containing a grant of land to the Territory of Iowa, as is material to a consideration of the question involved, is as follows: "That there be, and hereby is, granted to said Territory of Iowa, for the purpose of aiding said territory to improve the navigation of the Des Moines river from its mouth to the Raccoon Fork (so-called), in said territory, one equal moiety in alternate sections, of the public lands (remaining unsold and not otherwise disposed of, incumbered or appropriated,) in a strip five miles in width on each side of said river, to be selected within said territory by an agent or agents to be appointed by the governor thereof, subject to the approval of the Secretary of the Treasury of the United States." This Act was approved August 8, 1846.

On the seventeenth day of October, 1846, James Pipre, the acting commissioner of the General Land Office, addressed a communication to James Clark, then governor of Iowa, calling his attention to said grant. This letter contains the following: "Under this grant, the territory is entitled to the vacant lands in the alternate sections within five miles on each side of the Des Moines river, from Sullivan's line, the northern boundary of Missouri, to the Raccoon Fork of the Des Moines river. The act authorizes the selections to be made by an agent or agents appointed by you, but as the grant is limited to one equal moiety of the unsold and unappropriated, etc., to be taken in alternate sections, the only selection which appears to be required, or which can be made under the law, is for you to determine whether you will take the lands in the sections having even numbers, as 2, 4, 6, etc., or those that have odd numbers, as 3, 5, 7, etc. The odd numbers would probably be the most advantageous to the territory, as in selecting the even numbers you would be deprived of the 16th section in each township, which, as you are aware, is reserved for schools. Enclosed I send you a diagram of this grant, the boundary being colored pink, the alternate sections blue, and the school lands brown. I also enclose you a list showing the

areas of all the sections, or parts of sections, within this grant, those having odd numbers in one column and the even numbers in another. When you have determined the sections you will select, please advise the land officers at Fairfield and Iowa City, who have been instructed to withhold from sale or entry of any kind all the vacant and unappropriated land in the sections you may select. Please also advise this office, return the list and diagram, and a list of the vacant lands in the sections selected will be immediately prepared, submitted to the secretary for his approval, as required by law, and when approved will be certified to you."

On the same day the commissioner addressed a communication to the register and receiver at Iowa City, directing them, as soon as advised of the selections made, to reserve from sale or entry all the unsold and unappropriated lands in the sections selected, until further advised.

The governor, under the provisions of the act of Congress above referred to, appointed Jesse Williams and Josiah H. Bonney commissioners to make selection of the lands, and on the seventeenth day of December, 1846, they reported to the governor that they had "selected the odd sections as designated on the map furnished by the General Land Office, showing the location of the Des Moines, and the sections of land within five miles of said river."

On the 10th day of March, 1847, Jesse Williams, one of the aforesaid commissioners, addressed to Richard M. Young, Commissioner of the General Land Office, the following communication: "I herewith return to the General Land Office the diagram, furnished to the Governor of Iowa Territory, of the surveyed lands within five miles on each side of the Des Moines river, the alternate sections being granted to Iowa by Act of Congress for the improvement of the Des Moines river. I have the honor to inform you that the *odd* sections, as designated on this diagram, have been selected by the commissioners appointed by the Governor of the Territory, and that the land officers have been duly notified of that fact."

On the 23rd of February, 1848, Richard M. Young, Commissioner of the General Land Office, addressed a letter to

the secretary of the board of· public works excusing the delay of the department in certifying the selections made, on account of the erroneous and defective surveys along the Des Moines river, which prevented the General Land Office from submitting to the Secretary of the Treasury the selections made. This letter states that the surveys have been corrected, that action will be had as soon as possible, and when approved the lands will be certified. This letter also states that a question having arisen as to the extent of the grant, and the opinion of this office having been requested thereon, the state is entitled to the alternate sections within five miles of the Des Moines river throughout the whole extent of that river within the limits of Iowa.

On the 19th day of June, 1848, the President of the United States issued his proclamation for the sale of the lands in controversy; on the 16th day of the following October, and on the 30th day of October, 1848, they were entered by Wm. Cooper by bounty land warrant, number 24,735, and they were patented to him October 5, 1852.

On the first day of April, 1849, there was filed in the office of Secretary of State of Iowa, "a condensed list showing the tracts vacant and undisposed of in the odd sections within five miles of the Des Moines river from its mouth to the Raccoon Forks, (so called,) selected by the commissioner appointed by the Governor of Iowa Territory, under the provisions of the Act of Congress, approved the 8th day of August, 1846, entitled, 'An Act granting certain lands to the Territory of Iowa to aid in the improvement of the navigation of the Des Moines river in said Territory, within the limits of the Iowa City district.'" This list is dated March 12, 1849, is authenticated by the signature of Richard M. Young, Commissioner, and does not contain the lands in controversy, but does include all the remainder of the section.

On the 1st of June, 1849, the Commissioner of the General Land Office addressed a communication to the register and receiver at Iowa City, advising them that the Secretary of the Treasury had decided that the grant to the State of Iowa, under the Act of the 8th of August, 1846, extends along the

Des Moines river to its source, and did not stop at the Raccoon Forks as had before been decided, and directing them to withhold from sale all the lands situated in the odd numbered sections within five miles of each side of the river above the Raccoon Forks.

Both parties introduced in evidence three lists of lands. List number one shows, "the tracts falling within the limits of the Des Moines grant, above the Raccoon Forks of the Des Moines river, so far as the surveys have extended, under the decision of the Secretary of the Treasury, of 2nd of March, 1849, that said grant extended to the north boundary of the state." This list contains the land in controversy.

List number two shows, "the tracts which have been disposed of subsequently to the 24th of August, 1848, (being the date of the receipt by the land officers of the letter of 7th August, 1848, indicating that the grant extended only to the Raccoon Forks of the Des Moines river,) and previous to the 16th of June, 1849, the date of their reception of the letter from this office of 1st of June, 1849, communicating the Secretary's decision that said grant extended beyond said point and to the north boundary of the state." This list does not contain the lands in controversy.

List number three "shows the residuary or vacant tracts, after deducting from list number one the sales contained in list number two, and is an exhibit of the lands accruing to the state in virtue of the grant, not interfered with by previous sales." This list contains the lands in controversy. Attached to this list is a certificate of the Secretary of the Department of the Interior, dated October 30, 1851, as follows: "The selections embraced in the within list, number three, are hereby approved in accordance with the views expressed in my letter of the 29th instant, to the Commissioner of the General Land Office, subject to any rights which may have existed at the time the selections were made known to the land officers by the agents of the state, it being expressly understood that this approval conveys to the state no title to any tract or tracts which may have been sold, or otherwise disposed of, prior to the receipt by the local land officers of

the letter of the Commissioner of the General Land Office, communicating the decision of Mr. Secretary Walker, to the effect that the grant extended above the Raccoon Fork."

On the 3rd day of May, 1858, the State of Iowa conveyed to plaintiff several thousand acres of land, including the lands in controversy.

The land has been in the possession of William Cooper and his grantees ever since the year 1845.

The foregoing is a statement, as nearly as practicable in the chronological order of the events, of the material testimony introduced, except that relating to certain plats or maps offered in evidence, and which will be hereafter considered.

The material question involved is whether the lands are situated below or above the Raccoon Forks. If they are situated

1. PUBLIC lands: Des Moines river grant: construction. above it is not, as we understand, denied that they belong to the defendants, for the entry of Cooper was made October 30, 1848, and the lands above the Raccoon Forks were not withdrawn from sale until June 1, 1849, and the approval to the state of lands selected above the Raccoon Forks states that it is expressly understood that it conveys to the state no tracts which have been sold, or otherwise disposed of, prior to the receipt by the local land officers of the letter of the Commissioner of the General Land Office, communicating the decision of Secretary Walker that the grant extended above the Raccoon Fork.

From an examination of the plats introduced it appears that the general direction of the Des Moines river, below the Raccoon Fork, is almost south-east, whilst above the Raccoon Fork the direction of the Des Moines river seems to be but little east of south. If the terminal line at the Raccoon Fork be drawn due east and west the lands in controversy would clearly be above such a line. If it be drawn north and south they would as clearly be below it. The Government seems to have adopted a line drawn in neither of these directions as the terminal line, but one as nearly as practicable at right angles with the general direction of the river, but at what point of the compass we have no means of determining accurately from the testimony. As nearly as we can determine,

the lands in controversy are just above or outside of a line drawn due north-east from the Raccoon Fork.

Inasmuch as we have no means of determining the direction of the terminal line established by the Government, the fact that the list of lands certified to the state, below the Raccoon Fork, does not contain these lands although it contains all the balance of the section, and that the list certified to the state above the Raccoon Fork does contain them, is almost conclusive of the fact that the Government adopted a terminal line of such direction as to throw these lands above it; and, if such was the direction of the line adopted, we have now no means of determining that the terminal line thus established was not a proper one, even if the action of the Government upon that question be not conclusive, a point which we need not now determine.

Appellant introduced upon the trial a plat or map, furnished by the Commissioner of the General Land Office, accompanied by a letter dated August 25, 1868, as follows: "Pursuant to your letter of June 30th, I herewith enclose a diagram showing the Des Moines River and five miles limits on each side, from the mouth of the Raccoon Fork to the district line of Fort Dodge, township 86."

This letter was in reply to one of F. G. Clark, Register at Des Moines, dated June 30th, 1868, as follows: "Referring to the copy of the Hon. Secretary's letter of the 17th inst., transmitted with yours of the 19th inst., relative to furnishing this office with copies of papers, etc., in your department, will you please furnish a diagram of the Des Moines river, to the south line of township 86, N., showing where a line cuts the Des Moines river, as decided by the department under the act of August 8th, 1846. The Supreme Court has decided the grant of 1846 only extends to the mouth of 'Coon river. We have no means of showing the line adopted by the department."

Upon the plat furnished in response to this letter is marked an irregular line, with the words, "termination line of the river grant of 1846." The lands in controversy are included within this line. Appellant claims that this plat is a copy of the diagram sent by the Commissioner of the General Land

Office to the Governor of Iowa Territory in 1846, and which is now shown to be lost, and argues that the plat shows the lands to be below the Raccoon Fork. We are satisfied that this plat cannot be a copy of the original diagram, for at least two reasons, and others might be given. First, the original diagram purports to contain lands extending north only as far as the Raccoon Fork, shown by the plat to be in township 78, whilst the plat shows the five mile limit from the mouth of the Raccoon Fork, to the district line of Fort Dodge, township 86. When the original diagram was made, the lands north of the Raccoon Fork were supposed not to be included in the grant. Second, the original diagram was made in 1846, whilst Mr. Clark, the Register testifies that the diagram furnished in response to his letter indicates the south line of the Mississippi & Missouri River Railroad, the six mile limit under the Act of Congress of 1856, and many other matters which had no existence when the original diagram was made. Even if this plat were a copy of the original diagram, which we feel satisfied it is not, it would not take precedence over the certified lists.

The defendant introduced in evidence two plats furnished by the Commissioner of the General Land Office to the Register at Des Moines; one November 4th, 1870, and the other February 13th, 1872, showing the five mile limits, and the termination line at the Raccoon Forks of the Des Moines river, under the act of August 8th, 1846. These plats both show the lands in controversy to be outside of the selections made south of the Raccoon Fork, thus differing from the plat furnished in 1868; and in other respects they differ from each other, one of them including the whole of section 22, and the other but 240 acres of it. This shows how liable to error any adjudication based upon these plats would be.

Without further discussion of the testimony, we feel satisfied that the lands in question are above or outside of the terminal line adopted by the government in 1846, and acquiesced in by the State in making its selections, and we are unable to say that a different line should have been adopted.

The decree dismissing plaintiff's petition is

AFFIRMED.